IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BRENDA A. PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:10-cv-06015-NKL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pending before the Court is Plaintiff Brenda Perry's ("Perry") Social Security Complaint. [Doc. # 4]. Perry seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of her request for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*. The Administrative Law Judge ("ALJ") found that Perry was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied Perry's request for review. Perry has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Because the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole, the Court denies Perry's Petition.

**I.     Background**

### A. Factual and Procedural History[1]

Born on March 1, 1965, Perry, who has a GED, had been employed as a cook and taxi driver. [Tr. 39, 40, 153]. Perry filed an application for disability insurance and supplemental security income benefits on July 17, 2006, claiming she became disabled on February 1, 2004, due to "HEP C, DEPRESSION, OBESE, ARTHRITIS." [Tr. 153, 171]. At an evidentiary hearing on April 13, 2009 [Tr. 36-74], Perry modified her disability onset date to July 1, 2005. [Tr. 44]. A supplemental hearing was held on April 28, 2009, to clarify the vocational expert's testimony. [Tr. 27-33]. Following the hearings on May 21, 2009, the ALJ issued a written decision denying disability benefits to Perry because she was not under a "disability" as defined in the Act. [Tr. 24]. After the Appeals Council denied Perry's request for additional administrative review of the ALJ's decision, Perry sought review by the Court.

Perry is approximately 5'10" tall and weighs about 324 pounds. [Tr. 38]. Perry testified that due to the lesions on her hands caused by hepatitis C, she could not maintain employment as a cook. [Tr. 40]. She drove a cab from approximately June through September 2008 [Tr. 40], but the medication she took to treat hepatitis C prevented her from driving. [Tr. 41]. Perry testified that she has been diagnosed with chronic obstructive pulmonary disease (COPD) and asthma, and occasionally has flare-ups of her asthma [Tr. 45], often caused by pollen, humidity, perfumes, fragrances, and ammonia.

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

[Tr. 55]. She also testified that she has arthritis in her neck, shoulder, hip, and back [Tr. 42] which makes it difficult for her to sit without moving around and stretching [Tr. 52] and also for her to bend over and pick things up. [Tr. 49]. Perry stated that due to tingling in her fingertips and numbness in her fingers, she could write for only five or six minutes, and that she will occasionally drop things. [Tr. 48-49].

Other problems Perry testified to include having difficulty with heat and cold because she was "hot all the time," [Tr. 50] and that she could not climb a ladder because she gets dizzy and is afraid of falling. [Tr. 54]. She also stated that it was difficult for her to keep focused on one thing because she has a lot of fleeting thoughts. [Tr. 50]. According to Perry, she sometimes has crying spells three to five times a week that last between two hours and all day [Tr. 61] and isolates herself frequently around twenty-six out of thirty days a month. [Tr. 63]. Perry's significant other, Michael Quinn, testified that he witnessed "quite a few" of Perry's crying spells and instances of self-isolation. [Tr. 67].

To treat some of her symptoms, Perry adjusts her seating position every ten to fifteen minutes before trying to readjust herself, sits with her feet up for six to eight hours a day, and lays in bed or the couch most of the day. [Tr. 55-59]. She testified that her doctor had advised her to keep her feet elevated at heart level. [Tr. 58].

Perry's obesity is well documented. [Tr. 20; *see, e.g.*, Tr. 383]. Her medical records also indicate some positive objective findings supporting her neck and back complaints in CT and MRI scans. [Tr. 19, 323-24, 332-36]. For this, Perry was treated

conservatively and testified that her only treatment has been injections. [Tr. 19, 44-45]. Perry's asthma and COPD were also treated using only conservative as-needed management. [Tr. 19-20, 45-46].

Perry's family doctor [Tr. 42], Eric Sollars, MD, treated Perry's various physical and mental complaints. In June 2006, Perry told Dr. Sollars that her antidepressant medication wasn't working since she started taking medication for hepatitis C. [Tr. 20, 316]. Dr. Sollars continued the medication and Perry did not complain about her depression on the two subsequent examinations with Dr. Sollars. [Tr. 314-15]. Other mental health records showed that Perry was diagnosed in September 2006 on intake with major depression with a Global Assessment of Functioning (GAF) score of 55. [Tr. 20, 422]. In December 2006, Perry reported continued difficulties, but described many situational factors that were contributing to her mental status including her mother's death and financial issues. [Tr. 419]. An additional medication was prescribed. [Tr. 419].

In January 2007, Emad Khan, M.D., a psychiatrist, performed a psychiatric assessment on Perry and diagnosed bipolar disorder not otherwise specified, anxiety disorder not otherwise specified, history of polysubstance abuse, marijuana abuse, and assessed a GAF of 60. [Tr. 20-21, 472]. Dr. Khan adjusted Perry's medication regimen and advised Perry to seek counseling and continue medication management. [Tr. 473]. Treatment records over the subsequent months, though mostly illegible, do indicate some symptom improvement, with comments including "mood is less anxious," [Tr. 466 (May 2007)] and "anxiety decreasing," [Tr. 469 (February 2007)]. In August 2007, Perry told

Dr. Khan that she was starting hepatitis C treatment which caused her to become very depressed. [Tr. 463]. Dr. Khan adjusted her medications. [Tr. 463]. In January 2008, Perry reported that she was doing well with decreasing anxiety. [Tr. 458]. Progress notes from May 2008 through April 2009 indicated that Perry received therapy and her therapists rated her GAF from 60 to 65. [Tr. 541-68].

Dr. Sollars had completed "physical residual functional capacity questionnaires" in August 2006 [Tr. 389-94], March 2009 [Tr. 526-30], and April 2009 [Tr. 606-10]. In March 2009, Dr. Sollars opined that Perry suffered from the following mental and physical impairments: depression, anxiety, frequent interference with attention and concentration due to pain; incapability of performing even "low stress" jobs, spinal radiculopathy, severe hepatitis C, and the need to be able to elevate her legs above the level of the heart. [Tr. 526-30]. Dr. Sollars estimated that Perry would likely miss work about four times a month. [Tr. 530]. In Dr. Sollars's revised questionnaire from April 2009, he opined that Perry would need to elevate her legs to heart level at least 25% of an eight-hour workday. [Tr. 608-09].

Perry lives with her two children, ages four and ten. [Tr. 38]. Her daughter's father comes over to the house and does the bulk of the housework. [Tr. 47]. Perry's significant other, Michael Quinn, testified that he visits Perry daily, maintains the chores, and takes care of the children [Tr. 65-66], although Perry stated that she prepares her son for school and is with her daughter when she wakes up and eats breakfast. [Tr. 58-59]. Perry testified that she could stand for ten to fifteen minutes before having to sit down,

5

and could walk half of a block to three-quarters of a block before becoming winded. [Tr. 47-48]. Because she cannot stay on her feet for very long, she typically does not shop. [Tr. 47]. She does very little cooking because she is unable to stand for a long period of time and is bothered by the heat. [Tr. 59]. She typically uses the microwave. [Tr. 59]. Perry stated that she could probably lift seven to ten pounds [Tr. 49] and that she drives "a couple of times a week" to pick up her son from school if it is raining and to attend church. [Tr. 39].

### B. The ALJ's Decision

To establish her entitlement to benefits, Perry must be unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Perry was not under a "disability" unless her impairment was so severe that she was unable to do her previous work or any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Perry did not meet this burden since Perry's alleged disability onset date of July 1, 2005. [Tr. 14].

The ALJ found that Perry had the following severe impairments: hepatitis C, chronic obstructive pulmonary disease (COPD), degenerative disc disease (DDD) of the cervical and lumbar spine, obesity, bipolar disorder, and anxiety disorder. [Tr. 16]. *See* 20 C.F.R. 404.1520(c) and 416.920(c). However, the ALJ determined that Perry did not have an impairment or combination of impairments listed in or medically equal to one

contained in 20 C.F.R. pt. 404, subpt. P, app. 1 (2008). The ALJ further found that Perry retained the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> must have the option to sit or stand at will; need to prop her feet up as much as 1 foot during the workday; no use of ladders or scaffolds; no crawling; only occasionally climb stairs, stoop, kneel or crouch; only occasional (1/3 of the day) handling and fingering; avoid concentrated exposure to heat; avoid moderate exposure to fumes and odors; no working around hazards such as dangerous machinery or unprotected heights; and only simple work with an SVP of 3 or less.

[Tr. 17].

Although the ALJ found that Perry could not perform past relevant work, he did find that Perry could perform the jobs of security system monitor, credit checker, and telephone solicitor. [Tr. 23]. The ALJ found that there are a total of 219,000 of such jobs in the national economy, 2,470 of which are in Missouri. [Tr. 23].

Perry raises two arguments on appeal. She asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to correctly assess her RFC because he improperly considered the opinion of Perry's treating doctor, Dr. Eric Sollars, with respect to both her mental and physical impairments, 2) presented a defective hypothetical to the vocational expert because it did not include Perry's physical impairments. [Doc. # 18, at 17-22].

**II.  Discussion**

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See*

7

*Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### A. Consideration of Dr. Sollars's Opinion

Perry argues that Dr. Eric Sollars, her treating physician, indicated that she suffered from mental and physical impairments and that the ALJ failed to properly accord substantial weight to his opinion. [Doc. # 18, at 19]. Perry points out that Dr. Sollars's "physical residual functional capacity questionnaire" from March 26, 2009, stated that Perry suffered from the following mental and physical impairments: depression, anxiety, frequent interference with attention and concentration due to pain; incapability of performing even "low stress" jobs, spinal radiculopathy, severe hepatitis C, and the need to be able to elevate her legs above the level of the heart. [Tr. 526-30]. Dr. Sollars estimated that Perry would likely miss work about four times a month. [Tr. 530]. In Dr. Sollars's revised questionnaire from April 2009, he opined that Perry would need to elevate her legs to heart level at least 25% of an eight-hour workday. [Tr. 608-09].

In his opinion, the ALJ noted that he considered all of Dr. Sollars's opinions regarding Perry's limitations, but they were not supported by the "longitudinal history

8

contained in his own treatment records." [Tr. 21]. Perry characterizes the ALJ's consideration of Dr. Sollars's opinion, however, as an improper rejection. [Doc. # 18, at 20]. That argument is not supported by the record. The ALJ's opinion noted only the inconsistencies of Dr. Sollars's opinions with his treatment notes; Perry points to no indication that the ALJ "rejected" Dr. Sollars's opinion in its entirety.

Perry additionally argues that the ALJ substituted his own opinion for that of Dr. Sollars when he included in Perry's RFC that Perry would "need to prop her feet up as much as 1 foot during the workday" despite Dr. Sollars's opinion that Perry elevate her legs to heart level. [Doc. # 18, at 20]. Dr. Sollars's opinion, however, is not conclusive and must be supported by medically acceptable clinical or diagnostic data. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998); *Choate v. Barnhart*, 457 F.3d 865, 870 (8th Cir. 2006) (ALJ permitted to disregard a physician's conclusory statement unsupported by medical evidence). Here, the ALJ specifically stated that Dr. Sollars's treatment notes include no annotations of Perry's need to elevate her legs and therefore do not support the doctor's own conclusion that Perry must elevate her legs to heart level for 25% of an eight-hour workday. [Tr. 22]. Further, there was no other substantial evidence in the record supporting Dr. Sollars's opinion, and thus the ALJ afforded this portion of the doctor's opinion "little weight." [Tr. 22]. Therefore, the ALJ did not substitute his own opinion for that of Dr. Sollars. Rather, the ALJ properly discounted Dr. Sollars's opinion, and, having weighed the credibility of Perry's testimony, included in Perry's RFC a need to prop her feet up as much as one foot throughout the workday. [Tr. 22].

Additionally, while Perry points out that Dr. Sollars's treatment notes from May 2006 indicate a past history of "depression," [Doc. # 18, at 11 (citing Tr. 317)], this is not objective medical evidence of the extent and duration of Perry's mental impairments, as opined by Dr. Sollars. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (ALJ entitled to give less weight to physician's opinion when based largely on patient's subjective complaints rather than on objective medical evidence). Perry points to no observations by Dr. Sollars that support his opinion of the extent of her mental impairments. Further, an ALJ can discount a treating physician's opinion based in part on a plaintiff's own testimony about her activities. *See Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009). Here, the ALJ noted that Perry's "daily activities show[] that she takes care of her two children, ages 4 and 10, and drives several times a week. She goes to church and participates in the services." [Tr. 21]. The ALJ also noted that Perry testified that she lies down for most of the day, even though there is no evidence in the medical record that supports such a necessity. [Tr. 21]. Moreover, the ALJ stated that the GAF scores of 60 or higher assessed by Perry's mental health care providers–whose notes document in detail Perry's mental health status–do not support disabling mental limitations. [Tr. 21]. *See Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence . . . .").

The Court finds that the ALJ properly considered Dr. Sollars's opinion and properly assessed Perry's RFC. Although Dr. Sollars is a treating physician of Perry's,

10

his medical opinion was appropriately discounted by the ALJ for the foregoing reasons. Additionally, Perry does not contest the ALJ's consideration of the remainder of the record evidence when assessing Perry's RFC.

### B. Hypothetical Presented by the ALJ to the Vocational Expert

The Court has found that the ALJ properly assessed Perry's RFC. *See* Part II.A. Because the ALJ presented a hypothetical to the vocational expert consistent with this RFC, the vocational expert's testimony stating that Perry could perform work existing in significant numbers was substantial evidence in support of the ALJ's determination. *See Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993) ("The VE's testimony amounts to substantial evidence if the question asked precisely stated the impairments that the ALJ accepted as true.").

## III. Conclusion

Accordingly, it is hereby ORDERED that Perry's Petition [Doc. # 4] is DENIED.

           s/ Nanette K. Laughrey
           NANETTE K. LAUGHREY
           United States District Judge

Dated: February 3, 2011
Jefferson City, Missouri